988 F.2d 123
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Avyleni Helen GREYEYES, Defendant-Appellant.
 No. 92-10065.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 12, 1993.
Decided Feb. 25, 1993.
 
 1
 Appeal from the United States District Court for the District of Arizona (Phoenix); No. CR-88-00231-01-RC; Robert C. Broomfield, District Judge, Presiding.
 
 
 2
 D.Ariz.
 
 
 3
 AFFIRMED.
 
 
 4
 Before CHOY, SCHROEDER and BRUNETTI, Circuit Judges
 
 
 5
 MEMORANDUM*
 
 
 6
 On the evening of February 6, 1987, defendant Avyleni Helen Greyeyes ("Greyeyes") hit her husband Thomas Tom ("Tom") with the pick-up truck she was driving. Tom died the next day. Greyeyes contended at trial that she was trying to leave hurriedly because she was afraid of Tom, and that the collision was an accident. The government asserted that Greyeyes deliberately tried to kill Tom with the truck. The jury convicted Greyeyes of involuntary manslaughter.[1] Greyeyes appeals the conviction for involuntary manslaughter and requests that her case be remanded for a new trial.
 
 
 7
 Greyeyes argues that (1) the district court abused its discretion in granting the government's motion in limine precluding the defense from presenting any evidence regarding alleged prior assaults by Tom against Greyeyes and her children, (2) the district court's ruling excluding evidence of Tom's prior assaults violated the law of the case doctrine, (3) the district court erred by refusing to give defense counsel's requested jury instruction regarding the defense of "accident," and (4) the government improperly used three peremptory challenges to remove Native Americans from the jury. We find these arguments without merit and we affirm.
 
 DISCUSSION
 A. Evidence of Prior Assaults by Tom
 
 8
 1. Was this evidence properly excluded as irrelevant?
 
 
 9
 The district court granted the government's motion in limine to exclude all evidence of alleged prior assaults by Tom against Greyeyes and her children on the ground that such evidence was irrelevant. We review evidentiary rulings by the trial court for abuse of discretion. United States v. Catabran, 836 F.2d 453, 459 (9th Cir.1988); United States v. Soulard, 730 F.2d 1292, 1296 (9th Cir.1984).
 
 
 10
 Greyeyes argues that evidence of Tom's alleged prior assaults against herself and their children was relevant because such evidence would have gone to her state of mind at the time of the collision.[2] Under the definition of involuntary manslaughter, the government had to prove that Greyeyes acted with gross negligence. United States v. Keith, 605 F.2d 462, 463 (9th Cir.1979). According to Greyeyes, she was in a fearful, frenzied state at the time of the collision. For the jury to determine whether she was grossly negligent, it had to appreciate the extent of her fear, which it could not do without knowledge of Tom's prior abusive behavior. Cf. United States v. Escamilla, 467 F.2d 341, 347 (4th Cir.1972).
 
 
 11
 Additionally, Greyeyes asserts that on the night of the collision, she legitimately feared that she was faced with a sudden emergency given the history of her relationship with Tom. Had the jury been aware of Tom's prior abusive behavior, it might have found that she was faced with an emergency and that her actions were not grossly negligent in that context.
 
 
 12
 The government counters this argument by contending that no real emergency existed on the night of the collision because the evidence showed that Tom was walking away from the truck when he was hit. The district court agreed that given the evidence presented regarding the circumstances of the collision, there was no basis for admitting evidence of Tom's prior assaults to show Greyeyes' state of mind at the time of the collision.
 
 
 13
 Although this issue presents a fairly close question, we cannot say that the district court's decision to grant the government's motion in limine was an abuse of discretion since the evidence presented supports the contention that Tom's past violent acts did not affect Greyeyes' state of mind at the time of the collision.[3]
 
 2. The Law of the Case Doctrine
 
 14
 In the first trial,[4] the district court admitted evidence of Tom's prior abuse of Greyeyes and her children. Greyeyes argues that under the doctrine of the law of the case, that evidentiary ruling could not be reversed in the second trial. "[U]nder the law of the case doctrine ... it is error for a court upon retrial to reverse an identical evidentiary ruling made during the first trial, barring clear error or a change in circumstances." United States v. Tham, 960 F.2d 1391, 1397 (9th Cir.1991).
 
 
 15
 We find that there was a change in circumstances, making it proper for the district court to reach a different ruling in the second trial. When the district court ruled in the first trial that the evidence regarding Tom's prior abusive behavior could come in, the court had not yet heard Greyeyes' testimony regarding what occurred on the night of the collision. At the second trial, the district court had the benefit of having heard all the evidence of the first trial, including Greyeyes' testimony, before ruling on whether the evidence of Tom's prior abuse should be admitted. After having heard from all accounts that Tom was walking away from the truck when he was hit, the district court in the second trial properly ruled that the evidence of Tom's prior abuse should not be admitted.
 
 
 16
 B. Jury Instruction on the Defense of Accident
 
 
 17
 The district court refused to give Greyeyes' proposed jury instruction No. 15 on the defense of accident.[5] This refusal was based on the district court's belief that the contents of jury instruction No. 15 were covered by other instructions.[6] Greyeyes contends that by refusing to give instruction No. 15, the district court failed to give a jury instruction on her theory of the case.
 
 
 18
 Our circuit has not resolved the issue of whether a district court's denial of a proposed jury instruction should be reviewed for abuse of discretion or de novo. United States v. Streit, 962 F.2d 894, 897 (9th Cir.), cert. denied, 113 S.Ct. 431 (1992). However, when the issue raised is whether a defendant's theory of the case is adequately covered by other instructions, that presents a question of law which we review de novo. United States v. Gomez-Osorio, 957 F.2d 636, 642 (9th Cir.1992).
 
 
 19
 A defendant has a right to a jury instruction on her theory of the case if it is supported by law and by the evidence in the record. United States v. Lesina, 833 F.2d 156, 160 (9th Cir.1987). However, "there is no right to have the instruction phrased in the precise terms requested by defendant." United States v. Tsinnijinnie, 601 F.2d 1035, 1040 (9th Cir.1979), cert. denied, 445 U.S. 966 (1980). All that is required is that the instructions given adequately conveyed the defendant's theory of the case. United States v. Springfield, 829 F.2d 860, 864 (9th Cir.1987); Tsinnijinnie, 601 F.2d at 1040. We find that the instruction given by the district court conveyed essentially the same meaning as the instruction requested by Greyeyes. The district court's instruction adequately covered Greyeyes' theory of the case.
 
 C. Use of Peremptory Challenges
 
 20
 Prosecutors are precluded from using their peremptory challenges to remove jurors on the basis of their race. Batson v. Kentucky, 476 U.S. 79, 89 (1986). Greyeyes argues that the government improperly used three of its peremptory challenges to strike Native Americans from the jury.
 
 
 21
 After voir dire, defense counsel objected to the government's removal of two Native American jurors, Mr. Begay and Ms. Russell. The government explained that it removed Mr. Begay because he had indicated that he had not planned on attending trial for more than one day, leading the government to believe that Mr. Begay would resent serving on the jury. The government removed Ms. Russell because she listed "The People's Court" as one of her favorite T.V. shows and stated that she did not read. The government did not want a juror who received most of her information about law from "The People's Court."
 
 
 22
 The Supreme Court has defined a race-neutral explanation as "an explanation based on something other than the race of the juror.... Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." Hernandez v. New York, 111 S.Ct. 1859, 1866 (1991). After hearing the government's explanations, the district court found that Mr. Begay and Ms. Russell were not improperly excused. A trial court's finding on discriminatory intent is considered a finding of fact and it is entitled to great deference on appeal. Hernandez, 111 S.Ct. at 1868; Batson, 476 U.S. at 98 n. 21; United States v. Power, 881 F.2d 733, 739 (9th Cir.1989).
 
 
 23
 Greyeyes asserts that the reasons offered by the government for striking the Native Americans are unconvincing. She argues that none of these potential jurors expressed any antagonism toward the government. Greyeyes also claims that the reason offered by the government for striking Ms. Russell applied to a number of jurors whom the government did not strike. While some of the unchallenged jurors may have shared several traits with Ms. Russell, the similarities are not enough to conclude that the district court, which had the opportunity to observe the demeanor of the prosecutor, clearly erred in determining that the reasons offered for striking Ms. Russell and Mr. Begay were race-neutral. See Power, 881 F.2d at 740.
 
 
 24
 After the jury was sworn, defense counsel challenged the government's use of a peremptory challenge to remove a third Native American, Mr. Hopper. The district court properly found that this challenge was untimely. See Government of Virgin Islands v. Forte, 806 F.2d 73, 76 (3d Cir.1986).[7]
 
 
 25
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3
 
 
 [1]
 This verdict was reached in the second jury trial concerning the collision which caused Tom's death. The case first went to trial in September 1989. At the first trial, the jury convicted Greyeyes of second degree murder. That conviction was reversed by this court on the basis of improperly admitted evidence. The case was remanded for a new trial, which resulted in Greyeyes' conviction for involuntary manslaughter
 
 
 [2]
 Greyeyes also argues that by refusing to admit evidence of Tom's prior assaultive behavior, the district court violated her right under the Sixth Amendment to present her theory of the defense. See Washington v. Texas, 388 U.S. 14, 19 (1967). "Because trial judges have broad discretion both to determine relevance and to determine whether prejudicial effect or other concerns outweigh the probative value of the evidence, we will find a Sixth Amendment violation only if we conclude that the trial court abused its discretion." Wood v. Alaska, 957 F.2d 1544, 1550 (9th Cir.1992)
 
 
 [3]
 The extent of Greyeyes' fear might be relevant if she were claiming self-defense or a battered woman syndrome defense, which she did not
 
 
 [4]
 See supra note 1
 
 
 [5]
 Defendant's requested jury instruction No. 15 reads as follows: "When a person commits an act or makes an omission through misfortune or by accident under circumstances that show no evil purpose, intention or gross negligence, she does not thereby commit a crime."
 
 
 [6]
 The district court gave the following instruction:
 The unintentional killing of another as a result of simple negligence is not a crime. Negligence means failure to use reasonable care. Reasonable care is the care which a reasonably careful person would use under similar circumstances. Negligence may consist of doing something that a reasonably careful person would not do under similar circumstances or failing to do something that a reasonable person would do under similar circumstances. The mere fact that an accident happened, standing alone, does not raise the inference that it was caused by negligence.
 This instruction was a combination of two other instructions requested by Greyeyes.
 
 
 [7]
 Due to the circumstances of this case, the reasoning in United States v. Thompson, 827 F.2d 1254 (9th Cir.1987), does not apply. The alleged "pattern" of the government's use of peremptory challenges in this case was clear to the defendant before the jury was sworn in, as is evidenced by the fact that she objected to the removal of two jurors prior to the swearing of the jury. Additionally, Mr. Hopper indicated that he was a Native American during voir dire so no new information was revealed after the jury was sworn